UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JERRY VON ROHR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:13-CV-232 (CEJ) |
| | ) |
| RELIANCE BANK and FEDERAL | ) |
| DEPOSIT INSURANCE CORP., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of a decision by the Federal Deposit Insurance Corporation (FDIC) regarding the application of golden parachute rules to plaintiff's breach of contract claim against his former employer, defendant Reliance Bank. Plaintiff and the FDIC have submitted briefs on the issues.[1] Plaintiff also moves for oral argument. Because the issues presented can be resolved without additional argument, that motion will be denied.

I. **Background**[2]

On July 29, 1998, plaintiff Jerry Von Rohr and Reliance Bankshares, Inc., executed an employment agreement for plaintiff to serve as the chairman, president, and chief executive officer of the bank, effective September 1, 1998. The term of the

---

[1]Plaintiff filed suit on February 15, 2013, asserting a breach of contract claim and seeking a declaration that his contract damages did not constitute a golden parachute under federal law and regulations. At the parties' request, the Court stayed the proceedings so that plaintiff could exhaust his administrative remedies before the FDIC. The parties filed the administrative record on October 31, 2013 and the stay was thereafter lifted [Doc. ##8 and 10].

[2]The parties have submitted the FDIC's decision for review under the Administrative Procedures Act, 5 U.S.C. §§ 701-06. Because the Court's review is limited to the administrative record (AR), the statement of facts is derived from documents in that record.

original agreement was sixty calendar months, with one-year renewals thereafter unless either party provided written termination notice at least sixty days before September 1st of each year. Employment Agreement, ¶3(a) (AR at p. 9). On September 1, 2001, plaintiff and Reliance Bank[3] entered into the following amendment to the employment agreement:

> 1. Paragraph 3(a) of the Employment Agreement is amended in its entirety to read as follows:
>
> > (a) <u>Term of Employment.</u> Effective September 1, 2001, the period of Executive's employment under this Agreement shall continue for a period of thirty-six (36) full calendar months thereafter. Commencing September 1, 2002, this Agreement shall continue for consecutive three (3) year periods unless either party terminates the same by giving written notice to the other not less than sixty (60) days before September 1, each year. If notice of termination is given as aforesaid, this Agreement shall continue for the balance of the term herein provided and then will terminate at the end thereof. . .

Amended Agreement, ¶1(a). All other terms of the original agreement remained in effect. ¶2.

On June 16, 2011, Reliance Bank notified plaintiff in writing that it would not renew the employment agreement and the agreement would terminate as of September 1, 2011. The notice was "provided according to the terms contained in Paragraph 1(a)" of the amended agreement. (AR at p.14). Plaintiff contested the bank's assertion that his term of employment ended on September 1, 2011, arguing that it extended until September 1, 2012. (AR at p.23). He claimed that, as a result of his premature termination, he was entitled to compensation for one year's salary, contributions to his retirement plan, and additional benefits. In July 2011, in response

---

[3]Reliance Bankshares assigned the original employment agreement to Reliance Bank. First Amendment to Employment Agreement (Amended Agreement) (AR at p.13).

to an inquiry from Reliance Bank, the FDIC stated that the requested payment constituted a prohibited golden parachute which could not be paid unless Reliance Bank submitted a golden parachute application certifying that plaintiff was not responsible for the bank's troubled condition. Reliance Bank did not file such an application. Id.

On October 28, 2013, Mark Moylan, deputy regional director for the FDIC's Division of Risk Management, issued a determination that the payment plaintiff seeks are for services he did not render to a troubled institution. The payment thus constitutes a golden parachute under the Federal Deposit Insurance Act (FDIA), 12 U.S.C. § 1828(k)(4)(A) and the FDIC's regulations, 12 C.F.R. § 359.1, and cannot be paid without the FDIC's prior written approval.

II. **Legal Standard**

As a general rule, actions taken by federal administrative agencies are subject to judicial review. See 5 U.S.C. § 706 (addressing scope of judicial review of agency action). When reviewing agency action, courts accord "substantial deference to the agency's interpretation of the statutes and regulations it administers." Friends of Boundary Waters Wilderness v. Dombeck, 164 F.3d 1115, 1121 (8th Cir. 1999) (citations omitted). The courts defer to the agency's interpretation "so long as it is not arbitrary, capricious, an abuse of discretion, or otherwise not supported by law." Id. (citation omitted). "Whether an agency's action is arbitrary and capricious depends on whether the agency has offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Id. (citations, internal quotations, and alterations omitted). The court may not substitute its judgment for that of the agency, South Dakota v. Ubbelohde, 330 F.3d 1014, 1031 (8th Cir. 2003),

even if the evidence would have also supported the opposite conclusion. Harrod v. Glickman, 206 F.3d 783, 789 (8th Cir. 2000). The plaintiff bears the burden of proving that the agency's action was arbitrary and capricious. South Dakota v. U.S. Dep't of Interior, 423 F.3d 790, 799-800 (8th Cir. 2005).

III. Discussion

As a preliminary matter, the Court notes that plaintiff has conflated two statutes that are administered by different agencies. In his complaint, plaintiff asks the Court to declare that his compensation is not subject to the Troubled Asset Relief Program (TARP), 12 U.S.C. §§ 5201 *et seq*. TARP is not administered by the FDIC but by the Treasury Department, which is not a party to this action. See 12 U.S.C. § 5211(1) (authorizing the Secretary of the Treasury to establish TARP). Regardless of this confusion, the parties are in agreement that plaintiff may not recover the damages he seeks if they constitute a golden parachute under the FDIC's regulations. Thus, it is appropriate for the Court to review the FDIC's application of its governing statute and regulations.

Section 18(k) of the Federal Depository Insurance Act (FDI Act), 12 U.S.C. § 12 U.S.C. § 1828(k)(4)(A), defines a golden parachute payment as:

> any payment (or any agreement to make any payment) in the nature of compensation by any insured depository institution . . . for the benefit of any institution-affiliated party [IAP] pursuant to an obligation of such institution . . .that—
>
> > (i) is contingent on the termination of such party's affiliation with the institution . . .; and
> >
> > (ii) is received on or after the date on which . . . (III) the institution's appropriate Federal banking agency determines that the insured depository institution in is a troubled condition.

12 U.S.C. § 1828(k)(4)(A).

Section 18(k) also grants the FDIC the authority to "prohibit or limit, by regulation or order, any golden parachute payment." 12 U.S.C. § 1828(k)(1). Under FDIC regulations, a "golden parachute payment" consists of:

> a payment (or any agreement to make any payment) in the nature of compensation by any [bank] . . . for the benefit of any current or former [institution-affiliated party] IAP pursuant to an obligation of such [bank] that
>
> > (i) Is contingent on, <u>or by its terms is payable on or after, the termination of such party's primary employment</u> or affiliation with the [bank]; and
> >
> > (ii) Is received on or after, or is made in contemplation of, any of the following events:
> >
> > \* \* \*
> >
> > > (C) A determination by the [bank's] . . .appropriate federal banking agency . . . that the [bank] is in a troubled condition, as defined in the applicable regulations of the appropriate federal banking agency . . . and,
> >
> > \* \* \*
> >
> > (iii) Is payable to an IAP whose employment by or affiliation with [the bank] is terminated at a time when the [bank] by which the IAP is employed is [in a troubled condition].

12 C.F.R. § 359.1(f)(1) (emphasis added).

The regulations define an "institution-affiliated party," or IAP, as "[a]ny director, officer, employee, or controlling stockholder (other than a depository institution holding company) of, or agent for, an insured [bank]." 12 C.F.R. § 359.1(h)(1). It is undisputed that plaintiff is an institution-affiliated party within the meaning of the regulation, and that the bank was in a troubled condition at the time of his termination. The Act excludes from the definition of golden parachute payments made pursuant to a qualified retirement plan or a bona fide deferred compensation plan, or by reason of the death or disability of an employee. 28 U.S.C. § 1828(k)(4)(C).

In making its determination, the FDIC examined the language of the statute and implementing regulations; the parties' positions regarding the employment contract; and plaintiff's arguments from case law. (AR at pp.28-31). Based on that examination, the agency found that (1) the payment plaintiff seeks is in the form of compensation to an IAP pursuant to a binding agreement; (2) it is contingent on, and being paid after, the IAP's termination; (3) the payment would be received after the bank was deemed to be in a troubled condition; and (4) the IAP was terminated while the bank was in a troubled condition. Based on these findings, the FDIC determined that the contract damages plaintiff seeks constitute an impermissible golden parachute.

Plaintiff argues that the FDIC determination is arbitrary and capricious because the payment he seeks is merely the compensation he would have received if he had not been improperly terminated. He argues that the payment is not a golden parachute because it is not "contingent on . . . termination," as required by 12 U.S.C. § 1828(k)(4)(A). He acknowledges, however, that the implementing regulation expands the statutory definition to include a payment that, "by its terms is payable on or after, the termination" of an IAP's employment. 12 C.F.R. § 359.1(f)(1)(i). There is no contention that FDIC exceeded its authority when it defined golden parachutes to include payments that are payable after termination. "It was . . . within the spirit of § 18(k) for the FDIC to extend this protection to agreements to make payments that are 'payable after' termination as well as to those that are 'contingent on' termination." Knyal v. Office of Comptroller of Currency, C 02-2851 PJH, 2003 WL 26465939 at *14-15 (N.D. Cal. Nov. 25, 2003) (noting that legislative purpose of § 1828(k) is to prevent terminated executives from draining funds from banks to detriment of shareholders or regulatory agencies).

-6-

Plaintiff argues that the regulation applies only to payments the parties agreed in advance would be payable after termination. The damages he seeks, he argues, are for compensation he is owed for the unexpired term of his contract which, "by its terms," was payable only before his termination. The FDIC considered plaintiff's claim that he was terminated before the contract expired:

> It is irrelevant . . . when the contract would have expired by its own terms. As soon as [plaintiff] was terminated and no longer providing services to the institution, any subsequent payments in the form of compensation would constitute golden parachute payments subject to prior FDIC approval. (AR at p.30).

Plaintiff argues that his claim for damages is comparable to the damages in Sterling Savings Bank v. Stanley, CV-12-214-EFS, 2012 WL 3643679 (E.D. Wash. Aug. 23, 2012). Sterling Savings Bank was a recipient of TARP funds when it terminated the employment of senior executive Heidi Stanley. She alleged that the termination was based on her gender and medical condition and filed suit in state court. The bank sought a declaration in federal court that any discrimination award Stanley won in the state action would constitute an impermissible golden parachute under TARP statutes and regulations.

Unlike the present case, Sterling Savings did not involve judicial review of an agency decision under the APA, and thus the court was not constrained by the deferential standard of review that applies here. Quoting the relevant portion of the TARP statute, the court defined a golden parachute payment as "any payment to a senior executive officer for departure from a company for any reason, except for payments for services performed or benefits accrued." Sterling Savings at *2 (quoting 12 U.S.C. § 5221(a)(2)). The district court determined that "[a]n employee who is fired as a result of her employer's discriminatory conduct is not 'departing' from the

employer as that term is" used in the TARP laws. Id. The employee would not have departed but for the wrongful termination and a damages award is made to compensate the employee who has been unable to continue receiving wages. Id. Put another way, an award of lost wages in this circumstance "is essentially a payment for services performed." Id. at *3. The court concluded that, in passing the TARP laws, "Congress did not intend to alter the right of a wrongfully-terminated senior executive officer to recover actual damages for discrimination." Id. (citation and internal quotation omitted).

In this case, the FDIC considered, and rejected, plaintiff's contention that his claim is analogous to that considered in Sterling Savings. Citing Keveney v. Missouri Military Acad., 304 S.W. 3d 98, 102 (Mo. 2010) (*en banc*), the FDIC determined that there is a fundamental difference between damages that may be recovered for a termination arising from unlawful discrimination and a termination arising from breach of an employment contract. (AR at pp.30-31). The Missouri Supreme Court stated:

> An employee discharged in violation of an employment contract can recover the amount of income he or she would have earned absent the breach, less any income earned in the interim. If an employee is discharged for refusing to violate a public policy requirement, a breach of contract action satisfies private contractual interests but fails to vindicate the violated public interest or to provide a deterrent against future violations. When an employer's actions violate not only the employment contract but also clear and substantial public policy, the employer is liable for two breaches, one in contract and one in tort. It follows that the employer must bear the consequences of its actions.

Keveney, at 102-03 (internal quotations and citations omitted). The FDIC determined that, unlike the wrongfully discharged employee in Sterling Savings, plaintiff is not seeking damages for a separate wrong over and above those he seeks for his breach of contract claim. The damages for the contract claim is the compensation to be paid

to an IAP who was terminated while the bank was in a troubled condition and therefore constitutes a golden parachute payment.

According the decision of the FDIC substantial deference, as it must, the Court finds that plaintiff has not met his burden of showing the decision is arbitrary and capricious. The FDIC has offered an explanation for its decision; that decision does not run counter to the evidence before the agency; and is not so implausible that it could not be ascribed to a difference in view or the product of agency expertise. Friends of Boundary Waters, 164 F.3d at 1121. The FDIC's explanation provides a "rational connection between the facts, the regulation it needed to apply and the choice it made." Harrison v. Ocean Bank, No. 10-23138-CIV, 2011 WL 2607086 at *5 (S.D. Fla. June 30, 2011) (FDIC was not arbitrary and capricious when it determined that agreement between terminated executive and bank in settlement of whistle-blower and Title VII claims constituted golden parachute payment).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the FDIC that the contract damages plaintiff seeks would constitute a golden parachute payment requiring prior written approval from the FDIC is **upheld**.

**IT IS FURTHER ORDERED** that plaintiff's motion for oral argument [Doc. #21] is **denied**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 20th day of May, 2014.