UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JERRY VON ROHR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:13-CV-232 (CEJ) |
| | ) |
| RELIANCE BANK, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the court on the motion of defendant Reliance Bank for summary judgment. Plaintiff Jerry Von Rohr has filed a response in opposition and the issues are fully briefed.

**I.     Background**

In 1998, plaintiff was employed by Reliance Bancshares, Inc., as its chairman, president, and chief executive officer. The term of the original agreement was sixty calendar months. Employment Agreement, ¶3(a) [Doc. #44-2]. On September 1, 2001, the plaintiff and defendant[1] entered into an amended employment agreement that stated in relevant part:

> (a) Term of Employment. Effective September 1, 2001, the period of Executive's employment under this Agreement shall continue for a period of thirty-six (36) full calendar months thereafter. Commencing September 1, 2002, this Agreement shall continue for consecutive three (3) year periods unless either party terminates the same by giving written notice to the other not less than sixty (60) days before September 1, each year. If notice of termination is given as aforesaid, this Agreement shall continue for the balance of the term herein provided and then will terminate at the end thereof. . .

---
[1]Reliance Bancshares assigned the original employment agreement to defendant Reliance Bank. Declaration of Allan D. Ivie ¶4 [Doc. #44-1].

Amended Agreement, ¶1(a) [Doc. #44-3].

On June 16, 2011, a special meeting of the defendant's board was convened to discuss plaintiff's employment. Letter dated Oct. 3, 2011, at 3 [Doc. #44-8]. The board believed that plaintiff's employment contract would expire on August 31, 2011, so long as they gave him at least 60 days' notice. During the meeting, "a majority of the Board quorum present voted to give you written notice that your Employment Agreement would not be renewed." Several reasons for the decision were identified including, as relevant here, "the opinion that your leadership was significantly responsible for the Bank's current financial condition." Id. at 3-4. That same day, the defendant notified plaintiff in writing that his employment agreement would not be renewed and his employment would be terminated effective September 1, 2011. The notice was "provided according to the terms contained in Paragraph 1(a)" of the amended agreement. Letter dated June 16, 2011 [Doc. #44-4].

Plaintiff asserted that his employment contract did not end for another year and claimed that he was entitled to compensation for one year's salary, contributions to his retirement plan, and other benefits. The defendant contacted the Federal Deposit Insurance Corporation (FDIC) to inquire whether the compensation plaintiff sought constituted a "golden parachute" payment. The FDIC responded that the requested payments indeed qualified as a golden parachute and could not be made to plaintiff unless the defendant submitted an application certifying that plaintiff was not responsible for the bank's troubled condition. The defendant never filed an application requesting authority to make the payments. See Administrative Record at 000023 [Doc. #8].

On February 15, 2013, plaintiff filed this action asserting a breach of contract claim and seeking a declaration that the compensation and benefits he requested do not constitute a golden parachute under federal law and regulations. On September 17, 2013, plaintiff asked the FDIC to determine whether the payments he seeks are a golden parachute. The court stayed proceedings while his request was pending before the FDIC. On October 28, 2013, Mark Moylan, deputy regional director for the FDIC's division of risk management, issued a determination that the payments plaintiff seeks would constitute a prohibited golden parachute under the Federal Deposit Insurance Act (FDIA), 12 U.S.C. 1828(k)(4)(A) and the FDIC's regulations, 12 C.F.R. § 350.1. The parties agreed that Mr. Moylan's determination constituted the final decision on the FDIC and asked the court to review the decision under the Administrative Procedures Act, 5 U.S.C. §§ 701-706. On May 20, 2014, the court determined that plaintiff had not met his burden of showing that the FDIC decision was arbitrary and capricious and upheld the FDIC's decision. [Doc. #13].

## II. Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material

fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

## III. Discussion

Defendant seeks summary judgment based on the doctrine of impossibility, arguing that it cannot comply with the contractual obligations plaintiff alleges without violating federal law.

Under Missouri law, "'impossibility' is explained as follows: 'If a party, by contract, is obligated to a performance that is possible to be performed, the party must make good unless performance is rendered impossible by an Act of God, the law, or the other party.'" Breitenfeld v. Sch. Dist. of Clayton, 399 S.W.3d 816, 835 (Mo. 2013) (*en banc*) (quoting Farmers' Elec. Co–op., Inc. v. Missouri Dep't of Corr., 977 S.W.2d 266, 271 (Mo. 1998) (*en banc*)). "[W]hen a contractual duty cannot be performed without violating the law, the duty of performance is discharged." Kansas City, Missouri v. Kansas City, Kansas, 393 F. Supp. 1, 6 (W.D. Mo. 1975) (citing Ellis Gray Milling Co. v. Sheppard, 222 S.W.2d 742 (Mo. 1949)

4

and Stein v. Bruce, 366 S.W.2d 732 (Mo. Ct. App. 1963)). The party arguing an "impossibility" defense must demonstrate that virtually every action possible to promote compliance with the contract has been performed. Id.

The FDIC has determined that the payments plaintiff seeks constitute a golden parachute under the FDIA. Under the applicable regulations, a "troubled depository institution" may make a golden parachute payment to an institution-affiliated party (IAP) such as plaintiff if and to the extent that:

1. the appropriate federal banking agency, <u>with the written concurrence of the FDIC</u>, determines that such a payment or agreement is permissible; or

2. such an agreement is made in order to hire a person to become an IAP in order to prevent the institution from being placed in a receivership or conservatorship; or

3. such a payment is made pursuant to an agreement to pay a reasonable severance payment, not to exceed twelve months salary, to an IAP in the event of change of control of the depository institution, provided that the depository institution obtains the approval of the appropriate federal banking agency.

12 C.F.R. § 359.4(a)(1)-(3) (emphasis added). The conditions in paragraphs 2 and 3 do not apply here and, thus, the FDIC must approve the payments plaintiff seeks. In order to obtain that approval, either the bank or plaintiff must submit a request "in writing to the appropriate regional director (DSC)," 12 C.F.R. § 359.6, and must certify that:

it does not possess and is not aware of any information, evidence, documents or other materials which would indicate that there is a reasonable basis to believe, at the time such payment is proposed to be made, that:

\* \* \*

(ii) The IAP is substantially responsible for . . . the troubled condition . . . of the insured depository institution, depository institution holding company or any insured depository institution subsidiary of such holding company.

5

12 C.F.R. § 359.4(a)(4)(ii); see also 12 C.F.R. 303.244(c)(6) (application must include certification of § 359.4(a)(4) points).

Based on these regulatory requirements, defendant makes the following argument: the FDIC has on two occasions stated that the payments plaintiff seeks in his breach of contract claim constitute a golden parachute that cannot be paid without the FDIC's approval. In order for the FDIC's approval to be obtained, either plaintiff or the bank must, *inter alia*, certify to the FDIC that there is not a reasonable basis to believe that plaintiff is substantially responsible for the bank's troubled condition. The defendant cannot make the necessary certification, see Oct. 13, 2011 Letter, and plaintiff has declined to do so.[2] Thus, the defendant argues, even if plaintiff is entitled to the additional compensation and benefits he seeks under the terms of the amended employment agreement, it is impossible for the defendant to perform.

Plaintiff attempts to sidestep the impossibility argument by asserting that he does not seek performance under the employment agreement, but rather seeks damages for a past breach, and that he is entitled to have the court determine whether a breach occurred. Plaintiff's argument fails. Damages cannot be paid where there is no duty to perform and, "when a contractual duty cannot be performed without violating the law, the duty of performance is discharged." Kansas City, Missouri, 393 F. Supp. at 6; see also Omnia Commercial Co. v. United States, 261 U.S. 502, 511, 43 S. Ct. 437, 438, 67 L. Ed. 773 (1923) (where

---

[2]Although plaintiff characterized his letter of Sept. 13, 2013 as an "application under 12 C.F.R. § 303.244," he did not certify that he was not responsible for the defendant's troubled condition. The FDIC informed plaintiff that his submission did not meet the basic requirements of an application but addressed the question as to whether the proposed payment constituted a golden parachute. FDIC Opinion [Doc. #44-7].

6

government requisitioned entire output of steel company, appellant's contract to purchase steel "was rendered impossible" and was "ended"). Furthermore, under Article III of the United States Constitution, courts can only hear "cases" or "controversies" and cannot render advisory opinions. In re Bender, 368 F.3d 846, 847-48 (8th Cir. 2004). If FDIC regulations prevent plaintiff from recovering damages on his breach of contract claim, a finding that the defendant breached plaintiff's employment agreement would amount to an advisory opinion.

Plaintiff asserts that there are disputed facts regarding the defendant's liability on his contract claim, including the duration of his employment contract, whether he was terminated for cause, and whether he is responsible for the defendant's troubled condition. While these facts may be in dispute, they are not material and, therefore, do not preclude entry of summary judgment. Even if plaintiff prevails on his claim, the defendant is prevented by law from paying the damages he seeks unless and until the FDIC determines that the payment is permissible. See Mountain Heritage Bank v. Rogers, 728 S.E.2d 914, 917 (Ct. App. Ga. 2012) (where FDIC did not consent to golden parachute payment, bank was prohibited from making requested payment pursuant to the federal regulations.) Plaintiff also argues that the position the FDIC has taken here is inconsistent with its decision in other cases. Again, this argument has no bearing on the defendant's ability to perform under the contract. Plaintiff's attempt to distinguish cases addressing whether severance payments constitute golden parachutes is similarly irrelevant to the defendant's ability to perform.

Plaintiff argues that the defendant "has not demonstrated that it cannot make the required certification to the FDIC" because it has not made a good-faith

inquiry into whether it could do so. Plaintiff's Opposition at 8 [Doc. #47]. Under the regulations, the defendant is only required to demonstrate that it has information providing a reasonable basis to believe that plaintiff was responsible for its troubled condition, thereby rendering it unable to make the required certification. <u>Clark v. Carver Fed. Sav. Bank</u>, 747 N.Y.S.2d 490, 491 (N.Y. App. Div. 2002) (to be relieved of obligation to pay severance benefits, bank is not required to demonstrate conclusively that plaintiff was actually responsible for its troubled condition). The October 3, 2011 termination letter[3] submitted by the defendant establishes that it has such information.

Plaintiff argues that he cannot submit his own application to the FDIC because the regulations require the applicant to calculate the proposed payment. Pl. Opp. at 10 (<u>citing</u> 12 C.F.R. § 359.4). To the extent that plaintiff has correctly interpreted the regulations, his damages are clearly specified in his complaint.[4] Complaint ¶ 13.

The court finds that the defendant has established that, by virtue of the FDIC's determination that the contractual damages plaintiff seeks constitute a golden parachute, its performance under the contract is impossible.

---

[3]Plaintiff challenges the October 3, 2011 letter on hearsay grounds. The hearsay objection is overruled. The letter is not offered to prove that plaintiff was terminated for cause or that he contributed to the defendant's troubled condition, but to show that the defendant possesses information prohibiting it from making the required certification.

[4]Plaintiff itemized his damages as follows: "one year of salary amounting to approximately $338,000.00; the use of a Bank-owned vehicle for one year, constituting a monetary value of approximately $12,000.00; a membership in a country club for one year, having a monetary value of approximately $15,500.00; compensation for services as a director on the Bank-related board entities in the approximate amount of $12,000.00; § 401k retirement plan contributions in the approximate amount of $10,000.00; and miscellaneous perks and benefits, such as a private office, use of a secretary and paid-for attendance at state and national banking conventions, having an approximate aggregate value of $17,500.00."

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. #43] is **granted**.

A separate judgment in accordance with this Memorandum and Order will be entered.

                                                CAROL E. JACKSON
                                                UNITED STATES DISTRICT JUDGE

Dated this 28th day of May, 2015.